Brett W. Johnson (#021527)
Sara J. Agne (#026950)
Colin P. Ahler (#023879)
Joy L. Isaacs (#030693)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: bwjohnson@swlaw.com
          sagne@swlaw.com
          cahler@swlaw.com
          jisaacs@swlaw.com

Timothy A. La Sota (#020539)
TIMOTHY A. LA SOTA, PLC
2198 E. Camelback Road, Suite 305
Phoenix, Arizona 85016
Telephone: 602.515.2649
E-Mail: tim@timlasota.com

*Attorneys for Intervenor-Defendants
Arizona Republican Party, Bill Gates,
Suzanne Klapp, Debbie Lesko, and
Tony Rivero*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leslie Feldman, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Arizona Secretary of State's Office, et al., <br><br> Defendants. | No. CV-16-01065-PHX-DLR <br><br> **INTERVENOR-DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** <br><br> **(Oral Argument Requested)** |

Pursuant to Fed. R. Civ. P. 12(b)(1), (6), and (7), Intervenor-Defendants Arizona Republican Party, Bill Gates, Suzanne Klapp, Debbie Lesko and Tony Rivero move to dismiss Plaintiffs' Second Amended Complaint (Doc. 233) in its entirety.[1]

## I. Plaintiffs' Claims and Pleading Suffer from Multiple Defects.

Without dwelling on the procedural defects of Plaintiffs'[2] pleading,[3] Intervenor-Defendants note that this Court may not "consider the merits of [Plaintiffs'] claim[s] or the propriety of the relief requested," unless Plaintiffs are "entitled to invoke the judicial process," which means they must have standing. *Linda R.S. v. Richard D.*, 410 U.S. 614, 616 (1973).

///

---

[1] Intervenor-Defendants have not filed a Notice and Certification of Conferral in regard to this new Motion, as they did with the original motion in Doc. 109. The parties conferred concerning Intervenor-Defendants' previously filed Motion to Dismiss (Doc. 108) and were unable to agree that the pleadings could be cured by permissible amendment. The Second Amendment Complaint also fails to cure the issues raised herein, and this Motion adheres to the scope of the narrowed issues set forth on the record during the proceedings resulting in the Court's Minute Entry on November 1, 2016 (Doc. 222). Therefore, and pursuant to the Court's subsequent Minute Entry (Doc. 231) ordering this Motion, the Intervenor-Defendants file it without conferring.

[2] Intervenor-Defendants note that Intervenor-Plaintiff Bernie 2016, Inc., has not filed an amended complaint-in-intervention, nor has it joined in Plaintiffs' Second Amended Complaint. To the extent Bernie 2016, Inc.'s original Complaint-in-Intervention remains a live pleading, Intervenor-Defendants respond by re-urging the portions of their original Motion to Dismiss (Doc. 108) applicable to it and also moving to dismiss it for the reasons stated herein applicable to it.

[3] The allegations in paragraphs 20, 32, 33, 36, 59, and 61, for example, cannot be said to "be simple, concise, and direct" and so violate Rule 8(d)(1), Fed. R. Civ. P. Certain parts of Plaintiffs' pleading also contain redundant and immaterial matter subject to being stricken. With the knowledge that an appellate court has directed that proceedings in this case be expedited, Intervenor-Defendants do not move to strike those parts under Rule 12(f), Fed. R. Civ. P., but note them for this Court, which has broad case management discretion. *See*, *e.g.*, *United States v. Doe*, 627 F.2d 183-84 (9th Cir. 1980) ("The trial court's power to administer the court calendar and to control the time and conduct of trial is broad. Scheduling of discovery, motions, and trial must be left to the discretion of trial judges.").

**A.     Plaintiffs' Out-of-Precinct ("OOP") Claims Are Not Fairly Traceable to Defendants' Conduct and Not Redressable, So Plaintiffs Lack Standing.**

To have standing, (1) a party must have suffered concrete injury to a protected interest, (2) the injury must be traceable to the defendants' conduct and not a non-party's conduct, and (3) any relief requested must be likely to redress the injury. *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.,* 554 U.S. 269, 273-74 (2008) (internal citations and some quotation marks omitted)*; see also Ne. Fla. Chap. of Assoc. Gen'l Contractors v. City of Jacksonville*, 508 U.S. 656, 663 (1993); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs have "the burden of establishing the existence of an actual case or controversy." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241 (1937)).

Plaintiffs here object to what allegedly results when various counties choose to use precinct-based voting. Because the remaining named Defendants (the Arizona Secretary of State and her office, along with the Arizona Attorney General) have no control over the counties in making that choice, Plaintiffs' Second Amended Complaint still fails the traceability and redressability standing requirements. Specifically, the standing doctrine requires a connection between the injury and the conduct: "the injury has to be fairly . . . traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). Redressability is "an analysis of whether the court has the power to right or to prevent the claimed injury." *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982). "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). If, as here, the requested relief will not resolve the injury, a plaintiff does not have standing to bring the claim. *See id.*

In connection with the OOP claims raised in Counts I-II, Plaintiffs seek relief including an injunction barring Defendants from "implementing, enforcing, or giving any effect to A.R.S. § 16-122, § 16-135, or § 16-584 to the extent that they require Defendants to reject provisional ballots in their entirety solely because they were cast in the wrong

- 2 -

precinct." (Doc. 233, at 42.) As deemed appropriate by the Ninth Circuit Court of Appeals, A.R.S. § 16-411 designates *the counties* as the local jurisdictions best suited to coordinate local election activities. *See Public Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1021 (9th Cir. 2016) (recognizing the various benefits of allowing local jurisdictions to select diverse methods of administering elections). Arizona law also makes *counties independently responsible for counting votes* after elections. *See*, *e.g.*, A.R.S. §§ 16-531; 16-584(E), 16-601. County officials determine whether to count or reject provisional ballots cast within their jurisdiction. *See* A.R.S. § 16-584(E); *Arizona Election Procedures Manual*, at 182 (Rev. 2014) ("*Manual*").[4] An injunction applying to the Defendants will not redress Plaintiffs' claimed injuries, as Defendants are not the ones rejecting provisional ballots cast in the wrong precinct—counties are.[5]

In addition, and despite their new notices of challenges to the constitutionality of those statutes[6] (Doc. 235), Plaintiffs' requested relief does not seek a declaratory order finding the actual statutes unconstitutional. Rather, it is just the "practice" of rejecting OOP ballots that Plaintiffs seek to enjoin, while they continue to leave unchallenged the specific language of the statutes at issue. (Doc. 233, at 42.) Because the individual counties charged with the actual counting or rejecting of provisional ballots remain absent from this matter, Plaintiffs' request for statewide injunctive relief relating to OOP voting should be denied. Plaintiffs cite to no Arizona authority that allows the Defendants to

---

[4] The *Manual* has the force of law, A.R.S. § 16-452, and can be found at: https://www.azsos.gov/sites/azsos.gov/files/election_procedure_manual_2014.pdf.

[5] Plaintiffs do not claim that the State somehow retains all centralized authority, however. *See Bush v. Gore*, 531 U.S. 98, 109 (2000) (not questioning that "local entities, in the exercise of their expertise, may develop different systems for implementing elections"); *see North Carolina Right to Life Political Action Comm. v. Leake*, 872 F. Supp. 2d 466, 475 (E.D.N.C. 2012) (dismissal of North Carolina Attorney General in election suit necessary, ultimate enforcement a local issue); *cf. League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 475 n.16 (6th Cir. 2008) (proper party must have "authority to control" the local jurisdictions carrying out elections).

[6] Plaintiffs never noticed compliance with A.R.S. § 12-1841 (Parties; notice of claim of unconstitutionality) as to H.B. 2023.

- 3 -

1  independently order the counties to take action pursuant to A.R.S. § 16-122, § 16-135, or
2  § 16-584.[7] *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44-45 (1976) (asserted
3  injury must be a consequence of the defendants' actions).

4        Plaintiffs' actions have specifically recognized the necessity of the counties being
5  parties in this matter. Plaintiffs' first subpoenas[8] since filing their Second Amended
6  Complaint—which are among the excessive and disproportionate amount of discovery[9]
7  Plaintiffs have served since then—were not directed at the Defendants. Instead, they were
8  directed at all of the counties seeking specific information related to OOP practices *by*
9  *those* counties. Plaintiffs' strategic choice to omit the counties as parties, while seeking
10 relief that renders those counties necessary and indispensable parties, puts the named

---

[7] Unlike other states, Arizona does not grant the Defendants here discretionary authority to direct counties as to how to carry out elections. The closest supervisory authority is provided in the *Manual*, which is promulgated in two steps: (1) consultation with the counties and (2) approval by the Secretary of State, Governor, and Attorney General. A.R.S. § 16-452(A), (B). Of note, Plaintiffs do not take issue with the language contained in the *Manual*. And they fail to plead a single instance where the Defendants have directed a county to carry out an action resulting in Plaintiffs' alleged injuries.

[8] As an example, Plaintiffs' subpoena to Maricopa County is attached as Exhibit 1. Maricopa County officials were dismissed as defendants in this matter *with prejudice*. (Docs. 203, 233, 234.)

[9] Just since January 6, 2017, Plaintiffs have served subpoenas on each of 15 county recorders in Arizona, with 19-20 categories of documents demanded in each subpoena. Plaintiffs have further demanded 19 categories of documents from the Cochise County Election Director via subpoena, and noticed subpoenas demanding multiple categories of documents from Representative Michelle Ugenti-Rita, Speaker of the House and Representative J.D. Mesnard, Senator Don Shooter, the Yuma County Elections Director, and the Arizona Republican Lawyers Association. The subpoenas to non-parties are in addition to the *more than 200* requests for production Plaintiffs have now served to parties since May 2016. Even without counting subparts, which this Court's standard case management order directs should be counted, Plaintiffs have now propounded more than 80 requests for production. This is double the limit provided in the Court's standard case management order and violates the sensible limits of proportionality in Rule 26, Fed. R. Civ. P. *See*, *e.g.*, *Skinner v. Ryan*, CV-12-1729-PHX-SMM(LOA), 2014 WL 3064897, at *2 (D. Ariz. July 7, 2014) ("All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)... These limitations reflect that, in addition to being relevant, discovery must also be proportional to the issues and needs of the case.")

Defendants and this Court in a quandary. Without the counties' participation as parties, the Court will not hear the counties' potential defenses to Plaintiffs' claims arising from rejection of OOP ballots or the local rationales for making such a choice. Instead, Plaintiffs appear to want the remaining Defendants to somehow defend the actions and independent decisions of individual counties that are not parties to the case—including those counties who never have been. This is simply inappropriate.

With the dismissal of Maricopa County from this action,[10] Plaintiffs have not named *any* county official as a defendant in this case. Simply, it is not the Defendants that are charged with implementing or enforcing OOP compliance, it is the counties—and Plaintiffs have never challenged the State law providing as much. A.R.S. § 16-411 (charging the county boards of supervisors with that responsibility). Plaintiffs have been on notice since the beginning of this case that to claim such relief, they need to bring this action against the individual counties specifically authorized to, and who choose to, follow a precinct voting method. (*See* Doc. 71, Tr. of Proceedings, dated 5/10/16, at 23:23–24:1.) It remains the case that "Plaintiffs' requested injunction[, which remains the same in the Second Amended Complaint,] would not remedy the inequities they have identified." (Doc. 214, at 14 (Court's Order denying preliminary injunction).) Despite this Court's clear Order, Plaintiffs still "have not advanced a coherent theory, and . . . the relief they seek [still] does not remedy the inequality they have identified." *Id.* Without the counties actually engaged in the practice of rejecting ballots cast OOP—and they are the only entities engaged in that practice in Arizona—Plaintiffs cannot satisfy the redressability element of standing. *See Sprint Commc'ns Co.,* 554 U.S. at 273-74 (redressability requires that it be "'likely' and not merely 'speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit") (internal citations

---

[10] Maricopa County is the main and most populous county at issue as to OOP claims, and it cannot be brought back before the Court, having apparently been dismissed with prejudice at Plaintiffs' agreement, request, and pleading—its status as a dismissed defendant is *res judicata*. (Docs. 203, 233, 234.)

- 5 -

and quotation marks omitted). Due to Plaintiffs' failure to include the correct parties, this Court has no ability to order any counties to count OOP provisional ballots. It cannot grant Plaintiffs the OOP relief they seek.

### B. Plaintiffs Have Failed to Join Necessary and Indispensable Parties; Their OOP Claims are Subject to Rule 12(b)(7) Dismissal.

In addition to failing multiple standing requirements, Plaintiffs' action is also barred by Rules 12(b)(7) and 19(a), Fed. R. Civ. P., which require dismissal or amendment of any action if missing parties are "necessary" because complete relief cannot be accorded in their absence or their interest may be impaired or impeded. Rule 19(a) requires a party to be joined if feasible and if necessary to "accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A), or if the action may "as a practical matter impair or impede the [party's] ability to protect [its] interest." Fed. R. Civ. P. 19(a)(1)(B)(i). Only one of these factors need be present, yet both are here. Rule 19's two-step evaluation framework, as to whether a party is (1) necessary and (2) indispensable, requires dismissal of Plaintiffs' claims. *See American Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022 (9th Cir. 2002) (holding that action must be dismissed on threshold ground of absent necessary and indispensable parties).

Again, the necessity of these absent parties is especially telling concerning the relief requested here, which is directed at the Defendants' implementation and enforcement of the OOP laws at issue. (Doc. 233, at 42.) As Defendants are not charged with implementing or enforcing the OOP laws at issue, they cannot be presumed to adequately represent the counties interests in this matter. *See Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999) (non-parties must be represented by named parties adequately to overcome Rule 19). Only the counties can provide that relief, and the fact that those independent jurisdictions that would be subject to and affected by such injunctive relief are absent warrants dismissal. 43A C.J.S. Injunctions § 326; *see also Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1381 (S.D. Fla. 2004); *Westchester Disabled on the Move, Inc. v. Cty. of Westchester*, 346 F. Supp. 2d 473, 479-80 (S.D.N.Y. 2004)

- 6 -

(failure to join local jurisdictions responsible for carrying out election mandates dismissal); *cf. Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976) (valid claim for a constitutional violation under § 1983 requires alleged specific injury as a result of the *specific conduct of a defendant*). As Plaintiffs have continued to refuse to add the necessary counties and in fact have settled claims against and arranged for the dismissal *with prejudice* of the Maricopa County defendants (Doc. 203, at 2), the Second Amended Complaint should be dismissed. The Court is being asked to adjudicate the rights of the counties as to their OOP systems without those counties properly before it. This is impermissible. *Cf. Ash Grove, Texas, L.P. v. City of Dallas*, 3:08-cv-2114-O, 2009 WL 3270821, at *15 (N.D. Tex. Oct. 9, 2009) (dismissing claim for relief requiring nullification of contracts held by absent third parties under Rule 12(b)(7)).

### C. Laches Bars Plaintiffs' Fifteenth Amendment Claim, Which Does Not Relate Back.

The laches doctrine is another jurisdictional bar, particularly to Plaintiffs' 15th Amendment claim regarding H.B. 2023, brought in Count IV of the Second Amended Complaint. "In the context of election matters, the laches doctrine seeks to prevent dilatory conduct and will bar a claim if a party's unreasonable delay prejudices the opposing party or the administration of justice." *Ariz. Libertarian Party v. Reagan*, --- F. Supp. 3d ---, 2016 WL 3029929, at *2 (D. Ariz. May 27, 2016) (quoting *Ariz. Pub. Integrity All. Inc. v. Bennett*, CV-14-01044-PHX-NVW, 2014 WL 3715130, at *2 (D. Ariz. June 23, 2014)). As is apparent from the face of the Second Amended Complaint, there has been unreasonable delay and thus resulting prejudice here to both the opposing party and the administration of justice. Despite the two telephonic status conferences dedicated to amendments to Plaintiffs' pleading, held on November 1, 2016 (Doc. 222), and December 15, 2016 (Doc. 231), Plaintiffs never broached the subject of a new intentional discrimination claim under the Fifteenth Amendment with the Court or Parties

prior to bringing it in the Second Amended Complaint.[11] Nor did they move the Court to allow a new claim. *See* Rule 15(a)(2), Fed. R. Civ. P.

This is particularly troubling because Plaintiffs allege this claim for the very first time after nearly nine months of litigation and base their allegations of intent solely on information related to a completely separate and different legislation enacted five years before H.B. 2023. (Doc. 233, at ¶¶ 69-70.) This other legislation was never enforced and shortly thereafter repealed, as Plaintiffs admit. (Doc. 233, at ¶ 71.) The alleged intent behind long-past other legislation is immaterial to the intent with which H.B. 2023 was enacted, and H.B. 2023 itself has been in effect, with a single, brief exception, since August 6, 2016, including through both primary and general elections in Arizona. Plaintiffs brought their initial claims as to it on April 15, 2016, and throughout preliminary injunction—including expert discovery—and appellate proceedings, they never alleged intentional discrimination. Defendants, as well as the "voters of Arizona" will suffer significant prejudice if the Court were to proceed with Plaintiffs' Fifteenth Amendment claim and enjoin H.B. 2023 on intentional discrimination grounds belatedly and defectively raised. *See Ariz. Minority Coal. for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n*, 366 F. Supp. 2d 887, 910-11 (D. Ariz. 2005) (dismissing case, including on grounds that Fifteenth Amendment claim was barred by laches).

Furthermore, under Rule 15(c)(1)(B), Fed. R. Civ. P., Plaintiffs' Fifteenth Amendment claim does not relate back to the dates of their earlier pleadings, as to do so, it would need to arise "out of the conduct, transaction, or occurrence set out . . . in the original pleading[.]" Nowhere in Plaintiffs' original, operative Amended Complaint (Doc. 12) is the prior legislation or the circumstances of its passage mentioned in relation to H.B. 2023; neither do any allegations of conduct susceptible to intentional discrimination

---

[11] Plaintiffs also unilaterally amended their pleading to dismiss parties that originally brought suit and, in the case of the Maricopa County defendants, that were originally sued, despite not complying with Rule 41(a)(1)(A)(ii), as they had previously done when dismissing parties. (Doc. 59.)

1  on the basis of race or color appear. Simply, the new allegations and claim related to the
2  Fifteenth Amendment do not arise out of the conduct, transactions, and occurrences set
3  out in the original pleading and therefore do not relate back. Fed. R. Civ. P. 15(c)(1)(B).
4  As it is barred by laches and the subject of an improper amendment, Plaintiffs' Fifteenth
5  Amendment claim must be dismissed. It, along with the remainder of Plaintiffs' claims, is
6  also subject to dismissal under Rule 12(b)(6), Fed. R. Civ. P.

**II.     Plaintiffs Do Not State Any Claim Upon Which Relief Can Be Granted.**

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Each of Plaintiffs' claims fail to meet this standard.[12]

**A.     Plaintiffs Fail to State a Valid § 2 Claim Under the VRA (Counts I, III).**

Count I asserts a claim under the 'effect prong' of § 2 of the Voting Rights Act ("VRA") based on what Plaintiffs call "Arizona's [r]ejection" of OOP provisional ballots. Section 2 states "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State . . . in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 52 U.S.C. § 10301(a). Meanwhile, Count III alleges that H.B. 2023 violates both the 'purpose and effect prongs' of the same statute. Whether Plaintiffs' concerns are considered individually or collectively, they fail to state a § 2 claim.

**1.     Out-of-Precinct Voting (Count I)**

Plaintiffs claim that rejecting OOP votes disproportionately impacts minority voters. (*See* Doc. 233, ¶ 91.) As discussed above, the counties that do any actual rejecting

---

[12] Intervenor-Defendants take Plaintiffs' factual allegations as true for purposes of this Motion only and continue to reserve the right to challenge them should this litigation proceed. *See Wyman v. Wyman*, 109 F.2d 473, 474 (9th Cir. 1940).

- 9 -

are necessary and indispensable—yet absent—parties relevant to this claim. But Plaintiffs do not even state the essential elements of a § 2 claim in any event. First, regardless of the facts alleged, the alleged restriction on voting does not deny or abridge a voter's equal opportunity to vote, which is a necessary element of § 2. *See* 52 U.S.C. § 10301(a); *see also Lee v. Va. State Bd. of Elections*, 155 F. Supp. 3d 572, 583-84 (E.D. Va. 2015) (dismissing § 2 claim when "there is no plausible contention that" election practice that may have inconvenienced voters "denied the opportunity to vote"). Voters can have their vote counted by simply traveling to the correct polling place. Voters who go to the wrong location are not denied an equal opportunity to participate in the political process. *See id.*; *Frank v. Walker*, 768 F.3d 744, 753 (7th Cir. 2014) (rejecting § 2 claim when Wisconsin "extend[ed] to every citizen an equal opportunity to get a photo ID," leaving no "'denial' of anything by Wisconsin, as § 2(a) requires").

Second, a § 2 plaintiff must allege with sufficient facts a "discriminatory burden" on the ability to participate equally in the political process that is, at least "in part," "caused by or linked to 'social and historical conditions' that have or currently produce discrimination." *League of Women Voters of N. Carolina v. N. Carolina*, 769 F.3d 224, 240 (4th Cir. 2014). Critically, only discrimination *by a state* can give rise to a § 2 claim. *Frank*, 768 F.3d at 753. "That's important, because units of government are responsible for their own discrimination but not for rectifying the effects of other persons' discrimination." *Id.* (citing *Milliken v. Bradley*, 418 U.S. 717 (1974)). Here, Plaintiffs fail to allege facts showing discrimination *by the State of Arizona* caused the alleged rates of OOP provisional ballot rejection among certain voters in counties that use precinct-based systems. (Doc. 214, (Court's Order) at 9 ("[I]t is circular to argue that minority voters are disproportionately rejected for being cast OOP because Arizona rejects OOP ballots.").) Just as they were before, vague allegations of socioeconomic disparities between minority and majority voters remain insufficient to establish the necessary causal link and are thus insufficient to state a § 2 claim. *See id.*

///

### 2. H.B. 2023 (Count III)

Plaintiffs assert that H.B. 2023—a sensible and narrowly drawn law in effect for nearly half a year at this point—was enacted with a discriminatory purpose and will disproportionately impact minority voters. (*See* Doc. 233, ¶ 100.) Plaintiffs fail to plead facts, however, to establish that a limited criminal restriction on ballot harvesting denies or abridges an equal opportunity to vote, as required for a § 2 claim. *See* 52 U.S.C. § 10301(a). All voters can continue to participate in early voting by mailing or turning in the ballot themselves or having a family member, household member, or caregiver do so. (*See* Doc. 233, ¶ 74.) And H.B. 2023 does not restrict any voter from casting their ballot in person on Election Day. Allegations that some voters may be inconvenienced by limiting who can collect early ballots do not give rise to a § 2 claim. *See Lee*, 155 F. Supp. 3d at 583-84 (dismissing § 2 claim based on alleged inconvenience to voters).

## B. Plaintiffs Fail to State a Valid Equal Protection Claim Based On "Severe Burden" (Counts II, V).

Count II alleges that the longstanding restriction on OOP voting severely burdens "Plaintiffs' and their constituencies', members' and adherents' First and Fourteenth Amendment rights." (Doc. 233, ¶ 97.) Meanwhile, Count V alleges in part that H.B. 2023 "substantially burdens the right to vote without sufficient justification." (Doc. 233, ¶ 111.) Plaintiffs fail to plead sufficient facts to support either of these assertions.

### 1. Out-of-Precinct Voting (Count II)

Plaintiffs contend that their right to vote, along with that of their constituencies, members, and adherents, is "severely burdened by the unjustified rejection of OOP provisional ballots." (Doc. 233, ¶ 97.) As discussed above, the Court should decline jurisdiction because Plaintiffs fail to satisfy standing requirements for their OOP claims, which are also brought against the wrong parties. In any event, a facially plausible Equal Protection claim based on an alleged severe burden must contain factual allegations showing such a burden. As Plaintiffs admit, non-discriminatory restrictions on the right to vote, like Arizona's OOP restriction, may be "justified by an important state regulatory

1  interest." (Doc. 233, ¶ 96) (citing *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)).

2  All agree on the relevant *Anderson-Burdick* balancing test, under which this Court
3  must "weigh 'the character and magnitude of the asserted injury to the rights'" that
4  Plaintiffs seek to vindicate "against 'the precise interests put forward by the State as
5  justifications for the burden imposed by its rule,' taking into consideration 'the extent to
6  which those interests make it necessary to burden'" Plaintiffs' rights. *See Burdick*, 504
7  U.S. at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)); *see also Pub.*
8  *Integrity All., Inc.*, 836 F.3d at 1024 (discussing the appropriate balancing and "means-
9  end fit analysis"). Where the restrictions are severe, however, "'the regulation must be
10  narrowly drawn to advance a state interest of compelling importance.'" *Burdick*, 504 U.S.
11  at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). Plaintiffs make no facially
12  plausible showing of severe burden.

13  Requiring voters to cast ballots within their designated precinct does not severely
14  burden the right to vote and the minimal burden imposed easily satisfies the more relaxed
15  standard.[13] It could not be otherwise, when the Supreme Court has vetted more demanding
16  restrictions—like a government identification requirement—and found them not to
17  meaningfully burden the right to vote. *See Crawford v. Marion Cty. Election Bd.*, 553
18  U.S. 181, 197-200 (2008). Appearing at the proper polling location is in some way always
19  inherent to in-person voting, whether a precinct-based or vote-centers model is used. *See*
20  *Colo. Common Cause v. Davidson*, 2004 WL 2360485, at *14 (D. Colo. Oct. 18, 2004)
21  ("[I]t does not seem to be much of an intrusion into the right to vote to expect citizens,
22  whose judgment we trust to elect our government leaders, to be able to figure out their
23  polling place."); *see also Service Emps. Int'l Union Local v. Husted*, 698 F.3d 341, 344
24  (6th Cir. 2012) (finding it illogical to absolve voters "of all responsibility for voting in the
25  correct precinct or correct polling place by assessing voter burden solely on the basis of
26  outcome—i.e., the state's ballot validity determination").

---

[13] (Doc. 214 (Court's Order), at 13 (noting that "more than two dozen other states enforce precinct-based systems by rejecting OOP ballots").)

- 12 -

Moreover, on the counterweight side of the balancing test, "[t]he advantages of the precinct system are significant and numerous." *Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 569 (6th Cir. 2004.) Among other things, the system (1) "caps the number of voters attempting to vote in the same place on election day"; (2) "allows each precinct ballot to list all of the votes a citizen may cast for all pertinent [elections]"; (3) helps prevent election fraud; and (4) "puts polling places in closer proximity to voter residences." *Id.* As a matter of law, the facts alleged by Plaintiffs fail to state a claim for severe burden related to OOP voting.

### 2. H.B. 2023 (Count V)

Plaintiffs claim in Count V that H.B. 2023 will severely and unjustifiably burden their right to vote. (Doc. 233, ¶ 109.) Even assuming the Second Amended Complaint's factual allegations are true, the contention is implausible on its face. H.B. 2023 has no impact whatsoever on voters' ability to vote in person on Election Day. *See* A.R.S. § 16-1005(H), (I) (codification of H.B. 2023's provisions). That is significant because, although the right to vote is fundamental, there "is no constitutional or federal statutory right to vote by absentee ballot." *Feldman v. Arizona Sec'y of State's Office*, 843 F.3d 366, 414 (9th Cir. 2016) (order enjoining H.B. 2023 stayed by *Arizona Sec'y of State's Office v. Feldman*, 137 S. Ct. 446 (2016)) (dissenting op. of Bybee, J., joined by O'Scannlain, J., Clifton, J., Callahan, J., and N.R. Smith, J.) (citing *McDonald v. Bd. of Election Comm'rs of Chic.*, 394 U.S. 802, 807-08 (1969) ("It is thus not the right to vote that is at stake here but a claimed right to receive absentee ballots . . . ."). Similarly, there is no fundamental right to have a person of one's choosing—or, more specifically here, a particular person who solicits to do so—return one's early voted ballot. *See Griffin v. Roupas*, 385 F.3d 1128, 1130 (7th Cir. 2004) (rejecting claim of a blanket right to vote by absentee ballot).

Based on the facts as Plaintiffs' allege them, H.B. 2023 does not impose any severe burden on early voting either. (Doc. 204, at 19.) Early ballots still can be returned in a variety of ways, including by mail or by hand delivery to a county recorder's office or a

1 polling place. (*See* Doc. 233, ¶ 74.) Voters can also continue to use household members, family members, and caregivers to assist them. *See id*. Given that voters *receive* early ballots by mail, A.R.S. § 16-542(C), requiring that such voters return the ballot in the same manner (or by hand delivery) is not unreasonable.[14] The absence of a severe burden is further illustrated by the fact *not one* individual Plaintiff, declarant, or deponent has still ever alleged that H.B. 2023 will prevent or has prevented them from voting. *See Qualkinbush v. Skubisz*, 826 N.E.2d 1181, 1199 (Ill. App. 2004) (concluding that "the burden placed upon absentee voters by the restriction on who may mail an absentee ballot . . . is slight," and furthers "important state interest" in "safeguard[ing] the integrity of the election process"); (Doc. 204, at 19 (noting Plaintiffs' failure to produce a single declaration from a voter severely burdened by H.B. 2023).)

Because H.B. 2023 does not impose a severe burden, sufficiently weighty, relevant and legitimate state interests justify it. *See Crawford*, 553 U.S. at 191; *see also Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). Here, the Legislature identified important interests to justify the bill—namely, preventing fraud that undermines the public's confidence in the electoral system and the integrity of its results. (*See* Doc. 233, ¶ 82); *see also Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) ("Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government."); *Frank*, 768 F.3d at 750 (courts must accept legislative finding that regulation promotes public confidence in electoral system). As no facts can overcome the State's recognized interest in election integrity, Plaintiffs fail to state a claim.

---

[14] Plaintiffs' allegations in paragraph 79 include paraphrased statements of a state senator who explained, prior to H.B. 2023's passage, that some rural residents of her district "do not receive home delivery of their mail and are therefore unable to rely on mail services to transmit their ballot to and from their home." (Doc. 233, ¶ 79.) Given that those voters already were unable to rely on mail services prior to H.B. 2023 taking effect, the law has no bearing on their right to vote or chosen method of doing so. (*See* Doc. 204 (Court's Order), at 16 (H.B. 2023 "does not eliminate or restrict any method of voting [.]").)

### C. Plaintiffs Do Not Advance a Valid Associational Rights Theory (Count V).

Count V further contends that H.B. 2023 "infringes upon the First Amendment associational rights of Plaintiffs, whose purpose—at least in part—is to encourage and facilitate voting." (Doc. 233, ¶ 112.) Plaintiffs' claim of "real and substantial burdens" on their associational rights fails because they fail to show any burden on their right to associate. (*See id.* at ¶ 114.) Specifically, Plaintiffs only claim that one of them has engaged in ballot harvesting in the past, without explaining how ballot harvesting prohibited by H.B. 2023 is expressive conduct inherent to the "right of political parties and their members to organize and engage in legitimate election-related political activity." (*See id.*, ¶¶ 20, 114); (*see also* Doc. 204, at 22 ("[Plaintiffs] have not shown ballot collection is protected First Amendment activity").)

Plaintiffs also continue to fail to allege sufficient facts to show that H.B. 2023 imposes any *real* burden on the right to associate. (*See* Doc. 204, at 22-23.) Plaintiffs instead continue to rely on strained and inapplicable analogies to cases involving restrictions on political parties' internal policies and procedures or voter registration activities. (*See* Doc. 233, at ¶ 113.) Voter registration concerns a central function of a political organization—to ensure that individuals who may support that organization are *eligible* to vote, and even then, not all activities related to it are expressive conduct. *See Voting for Am., Inc. v. Steen*, 732 F.3d 382, 392 (5th Cir. 2013). The act of physically delivering a completed ballot to a mailbox, county recorder's office, or polling place, meanwhile, is clerical. *See Rumsfeld v. Forum for Academic and Instit. Rights, Inc.*, 547 U.S. 47, 66 (2006) ("First Amendment protection [extends] only to conduct that is inherently expressive."); *Barrow v. Detroit Election Comm'n*, 854 N.W.2d 489, 502 (Mich. App. 2014) ("mailing of ballots" by city clerk is a "perfunctory, administrative task[]"). When Arizona has simply become one of the majority[15] of states that restrict

---

[15] Twenty-six other states restrict this activity in some form. *See*, *e.g.*, Cal. Elec. Code § 3017 (2016); Colo. Rev. Stat. Ann. § 1-7.5-107; Nev. Rev. Stat. §§ 293C.330, 293C.317; N.M. Stat. Ann. §§ 1-6-10.1, 1-20-7, 3-9-7; Ala. Code § 17-11-18; Ark. Code §§ 7-5-403,

- 15 -

third-party collection of ballots—and is now among fifteen states that attach felony penalties[16] to their restrictions—it is difficult to cognize that such sensible, administrative restrictions tread on the First Amendment.

In addition, while the practice of ballot harvesting is not similar to voter registration efforts, H.B. 2023 itself is similar to other Arizona laws that reasonably restrict association with individuals actively engaged in the voting process. For example, Arizona law prevents electioneering within 75 feet of a polling place, A.R.S. § 16-515, and only allows one person per voting booth at a time, with limited exceptions. A.R.S. § 16-580. These laws do not violate the First Amendment. *Cf. PG Publ'g Co. v. Aichele*, 705 F.3d 91, 113 (3d Cir. 2013) ("there is no protected First Amendment right of access to a polling place"); *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 748 (6th Cir. 2004).

Because H.B. 2023 does not impose a severe burden on the right to associate, it easily hurdles the balancing test at issue. *See Green Party of Ark. v. Daniels*, 733 F. Supp. 2d 1055, 1059-60 (W.D. Ark. 2010). Again, any burden imposed by H.B. 2023 is minimal and easily justified by the State's regulatory interests. *See Feldman*, 843 F.3d at 418 (Smith, N.R., J., dissenting from order enjoining H.B. 2023) (order stayed by 137 S. Ct. at 446); (Doc. 204, this Court's order denying Plaintiffs' requested preliminary injunction, at 22-23.) Plaintiffs admit to the precise State interests at issue—preventing voter fraud that undermines public confidence in the electoral system—and the State is not required to use

---

7-5-411; La. Stat. Ann. § 18-1308 (2015); Me. Stat. tit. 21-A §§ 753-b, 754-A, 791; Mass. Gen. Laws ch. 54 § 92; Miss. Code Ann. § 23-15-719; N.H. Rev. Stat. Ann. § 657:17; N.J. Rev. Stat. §§ 19:63-27, 19:63-16; 25 Pa. Stat. and Cons. Stat. Ann. § 3146.6; S.C. Code Ann. §§ 7-15-310, 7-15-385; Tenn. Code Ann. § 2-6-202; Va. Code Ann. §§ 24.2-705, 24.2-707, 24.2-709(A); W. Va. Code § 3-3-5.

[16] *See* Ark. Code § 7-1-104; Cal. Elec. Code § 18403; Conn. Gen. Stat. § 9-359; Ga. Code Ann. § 21-2-574; Ind. Code § 3-14-2-16(4); Mich. Comp. Laws § 168.932; Mo. Rev. Stat § 115.304; N.C. Gen. Stat. § 163-226.3; Nev. Rev. Stat. § 293C.330; N.J. Rev. Stat. § 19:63-28; N.M. Stat. Ann. §§ 1-6-9, § 1-6-10.1, § 1-20-7; Ohio Rev. Code § 3599.21; 26 Okla. Stat. Ann. § 16-102.1; Tex. Elec. Code Ann. § 86.006(g).

Plaintiffs' means or the 'least-burdensome' means of vindicating its interests with valid legislation. (*Contra* Doc. 233, ¶ 82.) Plaintiffs have thus failed to state a claim.

### D. Plaintiffs Do Not State a Valid Fifteenth Amendment Claim (Count IV).

Count IV of the Second Amended Complaint fails to state a claim for intentional discrimination as to H.B. 2023. The Fifteenth Amendment was "not designed to punish for the past; its purpose is to ensure a better future." *Shelby Cty., Ala. v. Holder*, 133 S. Ct. 2612, 2629 (2013). Plaintiffs' allegations regarding H.B. 2023 itself are not even "susceptible of an inference of discriminatory intent." *Cf. Varela v. Perez*, CV-08-2356-PHX-FJM, 2009 WL 3157162, at *4 (D. Ariz. Sept. 28, 2009). Importantly, "[d]iscriminatory purpose is an essential element of a Fifteenth Amendment claim." *Arizona Minority Coal. for Fair Redistricting*, 366 F. Supp. 2d at 911, 911 n.23 (dismissing plaintiffs' Fifteenth Amendment claim as both "barred by laches" and "not cognizable" under Rule 12(b)(6)). Instead, Plaintiffs rely heavily on prior legislation and items from a no-longer-in-effect federal preclearance process in an attempt to plead intentional discrimination; this is unavailing, as this Court noted in its prior Order. (Doc. 204, 12-14 (noting Plaintiffs' tendency to isolate quotes and take items out of context).)

Moreover, the Fifteenth Amendment "applies only to practices that directly affect access to the ballot." *See id.* (quoting *Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 334 n.3 (2000). H.B. 2023's sensible restrictions on who may return an early voted ballot do not restrict ballot or voting access based on race or color, intentionally or otherwise. *See McDonald*, 394 U.S. at 807-08. Plaintiffs' allegations fail to state differently, and their Fifteenth Amendment claim should be dismissed under Rule 12(b)(6), Fed. R. Civ. P.

### Conclusion

Plaintiffs' claims all have serious defects: in one instance a claim is asserted too late, in others, claims are brought against non-joined but necessary and indispensable parties, and, overall, Plaintiffs' claims are not accompanied by the requisite factual support that attends plausible claims for relief. The Second Amended Complaint should be dismissed in its entirety and with prejudice.

DATED this 17th day of January, 2017.

              Respectfully submitted,

              SNELL & WILMER L.L.P.


              By: */s/ Brett W. Johnson*
                Brett W. Johnson
                Sara J. Agne
                Colin P. Ahler
                Joy L. Isaacs
                One Arizona Center
                400 E. Van Buren, Suite 1900
                Phoenix, Arizona 85004-2202

                Timothy A. La Sota
                2198 E. Camelback Road, Suite 305
                Phoenix, Arizona 85016

                *Attorneys for Intervenor-Defendants*
                *Arizona Republican Party, Bill Gates,*
                *Suzanne Klapp, Debbie Lesko, and*
                *Tony Rivero*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a notice of electronic filing to the EM/ECF registrants.

 /s/  *Tracy Hobbs*