1   Daniel C. Barr (# 010149)
    Sarah R. Gonski (# 032567)
2   PERKINS COIE LLP
    2901 North Central Avenue, Suite 2000
3   Phoenix, Arizona  85012-2788
    Telephone:  (602) 351-8000
4   Facsimile:  (602) 648-7000
    DBarr@perkinscoie.com
5   SGonski@perkinscoie.com

6   Marc E. Elias (WDC# 442007)*
    Bruce V. Spiva (WDC# 443754)*
7   Elisabeth C. Frost (WDC# 1007632)*
    Amanda R. Callais (WDC# 1021944)*
8   PERKINS COIE LLP
    700 Thirteenth Street NW, Suite 600
9   Washington, D.C.  20005-3960
    Telephone:  (202) 654-6200
10  Facsimile:  (202) 654-6211
    MElias@perkinscoie.com
11  BSpiva@perkinscoie.com
    EFrost@perkinscoie.com
12  ACallais@perkinscoie.com

13  Joshua L. Kaul (WI# 1067529)*
    PERKINS COIE LLP
14  One East Main Street, Suite 201
    Madison, Wisconsin  53703
15  Telephone:  (608) 663-7460
    Facsimile:  (608) 663-7499
16  JKaul@perkinscoie.com

17  *Attorneys for Plaintiffs*

18  *Admitted pro hac vice*

19
                    UNITED STATES DISTRICT COURT
20
                        DISTRICT OF ARIZONA
21

22  Arizona Democratic Party, et al.,          No. CV-16-01065-PHX-DLR

23                    Plaintiffs,              **PLAINTIFFS' RESPONSE IN
                                                OPPOSITION TO INTERVENOR-**
24         v.                                  **DEFENDANTS' MOTION TO
                                                DISMISS**
    Arizona Secretary of State's Office, et al.,
25
                      Defendants.
26

27

28

# TABLE OF CONTENTS

**Page**

I.   THE STATE DEFENDANTS ARE THE APPROPRIATE DEFENDANTS TO REDRESS PLAINTIFFS' OUT-OF-PRECINCT CLAIMS................................................................. 1

II.  PLAINTIFFS' INTENTIONAL RACE-DISCRIMINATION CLAIMS ARE TIMELY ...................................................... 4

III. THE COMPLAINT SUFFICIENTLY STATES CLAIMS FOR RELIEF .......................................................................... 6

    A.  Plaintiffs Allege Cognizable Claims Under § 2 of the Voting Rights Act.......................................................................... 6

        1.  OOP Provisional Ballots ........................................ 7

        2.  HB2023 ................................................................. 9

    B.  Plaintiffs Have Alleged Cognizable Anderson-Burdick Claims...... 11

        1.  OOP Provisional Ballots ...................................... 11

        2.  HB2023 ............................................................... 12

    C.  Plaintiffs Allege a Cognizable First Amendment Claim ................ 14

    D.  Plaintiffs Have Adequately Alleged that HB2023 Is Intentionally Racially Discriminatory................................. 15

CONCLUSION ........................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Civil Liberties Union v. Fla. Bar*,
999 F.2d 1486 (11th Cir. 1993) ..................................................................... 1

*Ariz. Democratic Party v. Reagan*,
No. CV-16-03618-PHX-SPL, 2016 WL 6523427
(D. Ariz. Nov. 3, 2016) .................................................................................. 2

*Ariz. Minority Coal. for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n*,
366 F. Supp. 2d 887 (D. Ariz. 2005) ............................................................. 4

*Ass'n of Cmty. Orgs. for Reform Now v. Cox*,
No. 1:06-CV-1891-JTC, 2006 WL 6866680 (N.D. Ga. Sept. 28, 2006)..................... 15

*Burdick v. Takushi*,
504 U.S. 428 (1992) ..................................................................................... 11

*Chisom v. Roemer*,
501 U.S. 380 (1991) ....................................................................................... 7

*Coal. for Sensible & Humane Sols. v. Wamser*,
771 F.2d 395 (8th Cir. 1985) ....................................................................... 15

*Crawford v. Marion Cty. Election Bd.*,
553 U.S. 181 (2008) ..................................................................................... 11

*Danjaq, LLC v. Sony Corp.*,
263 F.3d 942 (9th Cir. 2001) ......................................................................... 5

*Diamond v. Charles*,
476 U.S. 54 (1986) ......................................................................................... 1

*Farrakhan v. Wash.*,
338 F.3d 1009 (9th Cir. 2003) ....................................................................... 7

*Feldman v. Ariz. Sec'y of State's Office*,
842 F.3d 613 (9th Cir. 2016) (Thomas, J., dissenting), *reh'g en banc
granted*, 840 F.3d 1164 (9th Cir. 2016) ......................................................... 8

*Feldman v. Ariz. Sec'y of State's Office*,
843 F.3d 366 (9th Cir. 2016) ................................................................. *passim*

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992)................................................................................ 2

*Gomez v. City of Watsonville*,
   863 F.2d 1407 (9th Cir. 1988) ........................................................... 8, 9

*Gray v. Johnson*,
   234 F. Supp. 743 (S.D. Miss. 1964)...................................................... 10

*Holder v. Hall*,
   512 U.S. 874 (1994)................................................................................ 7

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002) ................................................................. 4

*Lane v. Wilson*,
   307 U.S. 268 (1939).............................................................................. 17

*League of Women Voters of Fla. v. Browning*,
   575 F. Supp. 2d 1298 (S.D. Fla. 2008) ................................................ 15

*League of Women Voters of N. Carolina v. N. Carolina*,
   769 F.3d 224 (4th Cir. 2014) ............................................................ 8, 10

*League of Women Voters of Ohio v. Brunner*,
   548 F.3d 463 (6th Cir. 2008) ................................................................. 2

*Massachusetts v. EPA*,
   549 U.S. 497 (2007)................................................................................ 3

*Ne. Ohio Coal. for Homeless v. Husted*,
   696 F.3d 580 (6th Cir. 2012) ............................................................... 12

*North Carolina Right to Life Political Action Comm. v. Leake*,
   872 F. Supp. 2d 466 (E.D.N.C. 2012).................................................... 2

*Numrich v. Oregon*,
   No. 3:15-CV-00183-JE, 2015 WL 5130462 (D. Or. Aug. 31, 2015) ............ 6

*People Organized for Welfare & Emp't Rights v. Thompson*,
   727 F.2d 167 (7th Cir. 1984) ............................................................... 15

*Project Vote v. Blackwell*,
   455 F. Supp. 2d 694 (N.D. Ohio 2006).................................................. 15

*Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*,
   697 F.3d 1192 (9th Cir. 2012) ............................................................... 6

*Public Integrity Alliance, Inc. v. City of Tucson*,
836 F.3d 1019 (9th Cir. 2016) (en banc) .................................................. 2, 11

*Reno v. Bossier Parish Sch. Bd.*,
520 U.S. 471 (1997) ................................................................................ 16

*Thornburg v. Gingles*,
478 U.S. 30 (1986) ................................................................................ 7, 8

*TransWorld Airlines, Inc. v. Am. Coupon Exchange, Inc.*,
913 F.2d 676 (9th Cir. 1990) ................................................................... 6

*Trustees for Alaska Laborers-Constr. Indus. Health & Sec. Fund v. Ferrell*,
812 F.2d 512 (9th Cir. 1987) ................................................................... 4

*Veasey v. Abbott*,
830 F.3d 216 (5th Cir. 2016) (en banc), *cert. denied*, No. 16-393, 2016
WL 5394945 (U.S. Jan. 23, 2017) ...................................................... 10, 17

*Veasey v. Perry*,
29 F. Supp. 3d 896 (S.D. Tex. 2014) ...................................................... 16

*Village of Arlington Heights v. Metro. Housing Dev. Corp.*,
429 U.S. 252 (1977) ......................................................................... 15, 16, 17

*Voting for Am., Inc. v. Andrade*,
888 F. Supp. 2d 816 (S.D. Tex. 2012) ..................................................... 1, 2

*Wauchope v. U.S. Dep't of State*,
985 F.2d 1407 (9th Cir. 1993) ............................................................... 4, 5

*Wilson v. Stocker*,
819 F.2d 943 (10th Cir. 1987) .................................................................. 2

**STATUTES**

A.R.S. § 12-1841 ........................................................................................ 9

A.R.S. § 16-142 ......................................................................................... 2

A.R.S. § 16-452 ......................................................................................... 2

A.R.S. § 16-1021 ....................................................................................... 2

Fed. R. Civ. P. 15(c)(1)(B) ......................................................................... 6

52 U.S.C. § 10301 ..................................................................................... 10

52 U.S.C. § 10301(a) ........................................................................................ 6

**OTHER AUTHORITIES**

*Black's Law Dictionary* 7 (9th ed. 2009) ........................................................ 10

In their motion to dismiss, the Intervenor-Defendants ("ARP") contend that Plaintiffs' 42-page, 116-paragraph Second Amended Complaint ("Complaint") fails to state claims for relief. They also argue that Plaintiffs' claims are not redressable by the Secretary of State and Attorney General ("State Defendants"), even though those officials are responsible for implementing and/or enforcing the challenged election practices. And they argue, without demonstrating inexcusable delay or prejudice, that Plaintiffs' intentional race-discrimination claims are barred by laches. Each of the arguments is without merit and should be rejected.

## I.      THE STATE DEFENDANTS ARE THE APPROPRIATE DEFENDANTS TO REDRESS PLAINTIFFS' OUT-OF-PRECINCT CLAIMS

ARP's assertion that Plaintiffs do not have standing because their out-of-precinct ("OOP") claims are not redressable by the State Defendants fails for largely the same reason that the State's argument about Plaintiffs' purported failure to join necessary defendants does: the State Defendants are in fact responsible for implementing and/or enforcing the State's policy of disenfranchising OOP voters.

In a case challenging a rule of law, redressability "will exist when a defendant has 'definite responsibilities relating to the application of' the challenged law." *Voting for Am., Inc. v. Andrade*, 888 F. Supp. 2d 816, 828-32 (S.D. Tex. 2012) (quoting *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010)), *rev'd and remanded sub. nom. on other grounds*, *Voting for Am., Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013); *accord Am. Civil Liberties Union v. Fla. Bar*, 999 F.2d 1486, 1490 (11th Cir. 1993) ("Under United States Supreme Court precedent, when a plaintiff challenges the constitutionality of a rule of law, it is the state official designated to enforce that rule who is the proper defendant.") (citing *Diamond v. Charles*, 476 U.S. 54, 64 (1986) ("The conflict between state officials empowered to enforce a law and private parties subject to prosecution under that law is a classic 'case' or 'controversy' within the meaning of Art. III.")). This rule is grounded in the principle that "[a] suit against a state officer in his official capacity is, of course, a suit against the State." *Diamond*, 476 U.S. at 57 n.2. "Thus [when a plaintiff sues a state

official in his official capacity,] a controversy exists not because the state official is himself a source of injury, but because the official represents the state whose statute is being challenged as the source of injury." [1] *Wilson v. Stocker*, 819 F.2d 943, 946-47 (10th Cir. 1987) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)).

As set forth in detail in Plaintiffs' Response in Opposition to the State Defendants' Motion to Dismiss ("Opp. to State MTD"), the State Defendants are the officials designated to implement and/or enforce Arizona's policy of rejecting OOP ballots. The Secretary of State is Arizona's chief election officer and her office administers and oversees elections across Arizona, A.R.S. § 16-142; the Secretary and the Attorney General issue Arizona's Election Procedures Manual, which carries the force of law and expressly directs election officials not to count OOP provisional ballots, A.R.S. § 16-452; and the Attorney General has the authority to enforce Arizona's election laws "through civil and criminal actions," A.R.S. § 16-1021. *See also Ariz. Democratic Party v. Reagan*, No. CV-16-03618-PHX-SPL, 2016 WL 6523427 (D. Ariz. Nov. 3, 2016) (Secretary, not county officials, appropriate defendant in challenge to voter-registration deadline); Opp. to State MTD at 2-8. The State Defendants plainly have "definite responsibilities relating to the application of the challenged law," *Voting for Am.*, 888 F. Supp. 2d at 828-32 (internal quotation marks omitted), and Plaintiffs therefore have standing.

In addition, ARP's redressability argument fails because redressability exists if a declaration against a governmental defendant is "substantially likely" to cause nonparties to obey the court's order. *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992). There is

---

[1] The cases cited by ARP in support of the argument that the counties are the appropriate parties are inapposite. *Public Integrity Alliance, Inc. v. City of Tucson*, 836 F.3d 1019, 1021 (9th Cir. 2016) (en banc), did not involve a challenge to a state law. In *North Carolina Right to Life Political Action Comm. v. Leake*, 872 F. Supp. 2d 466, 475 (E.D.N.C. 2012), the Attorney General had no enforcement power over the challenged law. And, while ARP cites *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 475 n.16 (6th Cir. 2008), for the proposition that the "proper party must have 'authority to control' the local jurisdictions carrying out elections," Mot. at 3 n.5, *Brunner* says no such thing. Although it found in the case at hand that the Secretary of State and Governor were proper parties because they had authority to control the local election boards, it made no statements as to whether such authority is always required.

1    no serious question that, if this Court enjoins Arizona's policy of disenfranchising OOP

2    voters, county and local election officials will comply with that order.

3        In arguing that Plaintiffs do not have standing, ARP claims that Plaintiffs "object to

4    what allegedly results when various counties choose to use precinct-based voting" and

5    that the State Defendants "have no control over the counties in making that choice." Mot.

6    at 2. But this misconstrues Plaintiffs' argument—as they have repeatedly explained. *See*

7    Doc. 192 at 1 (collecting examples). Plaintiffs are not challenging any county's decision

8    to use a precinct-based system. Rather, they are challenging the *state law* that *requires*

9    counties to reject OOP provisional ballots in their entirety.[2] *See* Election Procedures

10   Manual (Doc. 101-8) at 18 ("The ballot shall remain unopened and **shall not be counted**

11   if … the voter is in the wrong precinct/voting area.") (partial emphasis in original); *see*

12   *also* Opp. to State MTD at 2-6. Plaintiffs' injury thus stems from state law and is fairly

13   traceable to and redressable by the State Defendants.[3]

14       Last, while ARP argues that Plaintiffs' OOP injury cannot be redressed because

15   "'the relief they seek [still] does not remedy the inequality they have identified,'" Mot. at

16   6 (quoting Doc. 241 at 14), the Supreme Court has made it clear that standing does not

17   require that a court be able to redress every injury a plaintiff suffers. Rather, as long as the

18   court can afford *some* relief, the plaintiff has standing. *Massachusetts v. EPA*, 549 U.S.

19   497, 526 (2007) (petitioners had standing where the harm "would be reduced to some

20   extent if petitioners received the relief they seek" even where their entire injury could not

21

22       [2] ARP asserts that Plaintiffs have not taken issue with the Manual and have
23   "fail[ed] to plead a single instance where the Defendants have directed a county to carry
     out an action resulting in Plaintiffs' alleged injuries." Mot. at 4 n.7. In fact, the Complaint
24   cites the Manual as one of the sources of Plaintiffs' OOP injury, *see* Compl. ¶ 51, for the
     exact reasons discussed herein. Further, as the rejection of OOP ballots is clearly a state
25   policy, contrary to ARP's assertions, there is no reason to involve the counties so that the
     Court can hear "the local rationales for making" the choice to reject such ballots. Mot. at
26   5. The counties have no choice but to reject these ballots.

27       [3] ARP also argues that by not including the 15 counties, Plaintiffs have failed to
     join necessary and indispensable parties. That argument should be rejected for the reasons
28   set forth in Plaintiffs' Opposition to the State Defendants' Motion to Dismiss, filed
     concurrently herewith, and which Plaintiffs incorporate here.

be remedied). Here, by providing the relief Plaintiffs' seek—enjoining the rejection of OOP ballots for races in which voters are otherwise eligible to vote—the Court would place voters who are disparately impacted by the law on more equal footing with other voters, and the inequality in Arizona's system would be substantially reduced.

## II.    PLAINTIFFS' INTENTIONAL RACE-DISCRIMINATION CLAIMS ARE TIMELY

ARP's laches defense to Plaintiffs' intentional race-discrimination claims also fails. "To successfully establish the defense [of laches], a party must show (1) there was inexcusable delay in the assertion of a known right and (2) the party asserting laches has been prejudiced." *Wauchope v. U.S. Dep't of State*, 985 F.2d 1407, 1411 (9th Cir. 1993) (internal quotation marks omitted). The burden of establishing laches is on the party raising the defense. *Trustees for Alaska Laborers-Constr. Indus. Health & Sec. Fund v. Ferrell*, 812 F.2d 512, 518 (9th Cir. 1987). ARP has not met its burden on either element.

*First*, ARP has not established—and cannot establish—that Plaintiffs delayed inexcusably in bringing their intentional race-discrimination claims. "A determination of whether a party exercised unreasonable delay in filing suit consists of two steps." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002) (citations omitted). The Court must (1) assess the length of the delay, "which is measured from the time the plaintiff knew or should have known about its potential cause of action," and (2) determine whether the delay was reasonable, taking into account "whether the plaintiff has proffered a legitimate excuse for its delay." *Ariz. Minority Coal. for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n*, 366 F. Supp. 2d 887, 908 (D. Ariz. 2005) (citing *Danjaq, LLC v. Sony Corp.*, 263 F.3d 942, 954-55 (9th Cir. 2001)).

In this case, ARP asserts that "unreasonable delay" is "apparent from the face of the Complaint." Mot. at 7. But ARP's bare-bones argument provides no insight into whether there was a cognizable delay, how long it was, or whether it was reasonable. The argument therefore cannot satisfy ARP's burden of establishing unreasonable delay. As

explained in the Notice of Compliance filed with the Second Amended Complaint,[4] moreover, Plaintiffs have added intentional-discrimination claims because evidence they obtained during the preliminary-injunction phase (and did not have when the First Amended Complaint was filed), including the preclearance file for SB1412, significantly bolstered the case for a finding that HB2023 was enacted with racially discriminatory intent.[5] *See* Doc. 232 at 2. Such a "delay"—to develop sufficient evidence to establish a claim—is not inexcusable. *Danjaq*, 263 F.3d at 954 ("[d]elay [is] permissible . . . when it is used to evaluate and prepare a complicated claim") (internal quotation marks omitted).[6]

*Second*, ARP has not established prejudice. "For the purposes of a laches defense, prejudice typically refers to the fact that a defendant no longer has witnesses or evidence available to it as a result of the passage of time, or that it has altered its position in reliance on a plaintiff's inaction." *Wauchope*, 985 F.2d at 1412. Yet ARP has not argued that either of these circumstances exists, Mot. at 7-8, and there is no reason to think they do.

Instead, ARP simply asserts that the State Defendants and the "voters of Arizona" will be prejudiced, without any explanation as to *how* this prejudice will occur. Mot. at 8. But even assuming *arguendo* that ARP can raise a laches defense based on alleged prejudice to *others*—and based on prejudice the State itself has not claimed—the prejudice requirement is clearly higher than that "the defendant will be worse off if the

---

[4]   The Court explicitly authorized Plaintiffs to file a Second Amended Complaint during the December 15, 2016 teleconference, in which counsel for all parties were present. Doc. 231. The amendment of the Complaint contemplated changes in the parties. Thus, ARP's claim that Plaintiffs failed to adequately seek the Court's leave to file an amended complaint in violation of Rule 15(a)(2) and in noncompliance with Rule 41(a)(1)(A)(ii) is incorrect.

[5]   As part of its laches argument, ARP makes much of the fact that the SB1412 was never enforced. But that is a merits-based argument regarding the weight of the evidence, not an argument regarding the reasonableness of the delay in filing a claim.

[6]   While Plaintiffs did not immediately amend their complaint upon obtaining this evidence, waiting to amend the complaint until after their motion for a preliminary injunction was resolved was clearly justified, as an immediate amendment of the complaint would almost certainly have delayed resolution of the preliminary injunction, which Plaintiffs sought in time to provide relief for the 2016 general election. Once the motion for a preliminary injunction was resolved and matters resumed in this Court, Plaintiffs amended their complaint.

relief is granted than he would be if it were not; that sort of prejudice could be claimed by all defendants all of the time." *TransWorld Airlines, Inc. v. Am. Coupon Exchange, Inc.*, 913 F.2d 676, 696 (9th Cir. 1990).[7] ARP's laches argument thus fails on both elements.

## III.   THE COMPLAINT SUFFICIENTLY STATES CLAIMS FOR RELIEF

In resolving a motion to dismiss for failure to state a claim, courts "accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*, 697 F.3d 1192, 1196 (9th Cir. 2012) (internal quotation marks omitted). "A claim should be dismissed only if it appears beyond doubt that the plaintiff can establish no set of facts under which relief could be granted." *Numrich v. Oregon*, No. 3:15-CV-00183-JE, 2015 WL 5130462, at *2 (D. Or. Aug. 31, 2015). ARP cannot meet this high bar with respect to any of Plaintiffs' claims.

### A.   Plaintiffs Allege Cognizable Claims Under § 2 of the Voting Rights Act

Plaintiffs have sufficiently alleged claims under the Voting Rights Act. Section 2 of the VRA provides in relevant part: "No voting … standard, practice, or procedure shall be imposed or applied … in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 52 U.S.C. § 10301(a). Courts typically apply a two-step analysis in evaluating a Section 2 vote-denial claim: First, "the challenged standard, practice, or procedure must impose a discriminatory burden on members of a protected class." *Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, 400 (9th Cir. 2016) (citing *League of Women Voters of N. Carolina v. N. Carolina*, 769 F.3d 224, 240 (4th Cir. 2014) ("*LOWV*")). Second, "that

---

[7] Any such inconvenience is particularly minimal here given that many of the critical facts that will support the intentional discrimination claim are already at issue in this case in the context of other claims. *See, e.g.*, Doc. 85 at 14-16 (partisan fencing argument). This substantial overlap in the pertinent facts also demonstrates that ARP's assertion that the intentional-discrimination claims do not relate back to the original complaint under Rule 15—the relevance of which is unclear—is incorrect. *See* Fed. R. Civ. P. 15(c)(1)(B) ("An amendment to a pleading relates back to the date of the original pleading when … the amendment asserts a claim … that arose out of the conduct, transaction, or occurrence set out … in the original pleading ").

burden must in part be caused by or linked to social and historical conditions that have or currently produce discrimination against members of the protected class." *Id.* (citations omitted). A plaintiff need not show that the challenged voting practice caused a disparate impact by itself, *Farrakhan v. Wash.*, 338 F.3d 1009, 1018-19 (9th Cir. 2003), or that the challenged practice makes voting impossible for minorities—merely that it makes voting disproportionately more burdensome. *See Thornburg v. Gingles*, 478 U.S. 30, 35-36, 44, 47 (1986); *Holder v. Hall*, 512 U.S. 874, 922 (1994) (Thomas, J., concurring). Further, the VRA should be read to "provide[] 'the broadest possible scope' in combating racial discrimination." *Chisom v. Roemer*, 501 U.S. 380, 403 (1991) (citation omitted).

### 1.    OOP Provisional Ballots

The Complaint plainly alleges facts establishing that Plaintiffs' challenge to the disenfranchisement of OOP ballots meets each of the elements of a VRA vote-denial claim. With respect to the first element, the Complaint explains that Hispanics, African Americans, and Native Americans are much more likely than whites in Arizona to cast OOP ballots and to go to the wrong polling location. Compl. ¶¶ 55-56; *see also id.* ¶ 8 (provisional ballots cast and rejected are disproportionately cast by Hispanic, African American, and Native American voters); *id.* ¶ 53 (African-American and Hispanic OOP voters "substantially more affected" by precinct consolidation). It also explicitly alleges that Arizona's rejection of OOP ballots has disparately impacted minority voters. *Id.* ¶ 91.

With respect to the second element, the Complaint is replete with allegations demonstrating that Arizona has a lengthy history of discrimination, that there are ongoing effects on minorities in Arizona due to that history, and that this history and these effects are linked to the discriminatory effect that the disenfranchisement of OOP ballots imposes on minority voters. *See, e.g.*, Compl. ¶ 40 (as compared to whites, minorities in Arizona have higher rates of unemployment, poverty, and home ownership, and lower rates of educational attainment); *id.* ¶ 44 ("history of language-based discrimination … makes it far more likely for Spanish-speaking voters to be misinformed about … the necessity of voting only in their assigned precinct"); *id.* (higher residential mobility for minority voters

makes it more likely that they present at the wrong precinct); *id.* ¶ 45 (minority voters who travel to the wrong polling location are "significantly less likely to have reliable access to vehicles and are more likely to hold less flexible, working-class jobs than their white counterparts, making it more difficult for them to travel to a second polling location if needed"); *id.* (homeownership and increased transience mean minorities more likely to experience frequent changes in polling locations); *id.* ¶¶ 92-93.

ARP's claim that these facts would not establish a violation of Section 2 misunderstands the applicable law. ARP insists that Plaintiffs have failed to plead a disparate burden because "the alleged restriction on voting does not deny or abridge a voter's equal opportunity to vote," as "[v]oters can have their vote counted by simply traveling to the correct polling place." Mot. at 10. The question under the VRA, however, is not how *severely* a law burdens the right to vote but whether it *disparately* burdens that right. *See Gingles*, 478 U.S. at 35-36, 44, 47 (plaintiffs need not show that practice makes voting impossible; they only must show that it makes voting disproportionately more burdensome); *Feldman v. Ariz. Sec'y of State's Office*, 842 F.3d 613, 635 (9th Cir. 2016) (Thomas, J., dissenting) ("the total number of votes affected is not the relevant inquiry; the proper test is whether minority votes are burdened"), *reh'g en banc granted*, 840 F.3d 1164 (9th Cir. 2016); *LOWV*, 769 F.3d at 244. And a provision that applies disparately to minority voters (who are more likely to present to vote OOP), burdens minorities more severely (as minorities face more challenges in traveling to the correct precinct), and disproportionately disenfranchises minorities clearly meets that test. *See also Feldman*, 842 F.3d at 628 (Thomas, C.J., dissenting) ("Statistically significant evidence [does] show[] that this practice disproportionately and adversely impacts minority voters.").

ARP's argument that Plaintiffs have not sufficiently pled the second element of the VRA vote-denial test because "only discrimination *by a state* can give rise to a § 2 claim," Mot. at 10, fares even worse. As explained in Plaintiffs' Reply in Support of Joint Motion for Preliminary Injunction of HB2023, Doc. 156 at 7-10, the Ninth Circuit rejected this view in *Gomez v. City of Watsonville*, 863 F.2d 1407 (9th Cir. 1988), writing that it was

"troubled" by the district court's apparent belief that, in assessing Senate Factors 1 and 5, "it was required to consider only the existence and effects of discrimination committed *by the City of Watsonville itself*"; "[t]his conclusion is incorrect." *Id.* at 1418; *see also id.* (focusing solely on "discrimination committed by the relevant political subdivision … would result in precisely the sort of mechanistic application of the Senate factors that the Senate Report emphatically rejects"). In addition, this argument fails because it ignores the Complaint's detailed allegations regarding Arizona's history of discrimination, Compl. ¶¶ 25-37 (discussing, e.g., segregation, literacy tests, English-only provisions for political candidates, racial discrimination in law enforcement, and systematic under-funding of bilingual education), the effects of which—as explained above—are linked to the discriminatory impact that results from the disenfranchisement of OOP voters.

## 2.  HB2023[8]

ARP's assertion that Plaintiffs have failed to plead a cognizable VRA claim with respect to HB2023 is also mistaken. As with Plaintiffs' challenge to the disenfranchisement of OOP ballots, Plaintiffs have clearly alleged both that HB2023 imposes a discriminatory burden and that this burden is in part caused by or linked to social and historical conditions that have or currently produce discrimination. *E.g.*, Compl. ¶ 9 (minority voters "disproportionately likely to be disenfranchised … as a result of H.B. 2023"); *id.* ¶ 59 (ballot collection combats low minority voter turnout and counteracts the effects of systemic discrimination; it "benefit[s] voters who are homebound and elderly, … lacking transportation, [and] voters in the Hispanic, Native-American, and African-American communities"); *id.* ¶ 46 ("minority voters are more likely to live in lower-income and tribal communities, many of which lack secure outgoing mailboxes, which makes it more difficult to return a voted early ballot"); *id.*

---

[8]  To the extent that ARP argues that A.R.S. § 12-1841 warrants dismissal of Plaintiffs' Complaint, Mot. at 3 n.6, Plaintiffs note that they fulfilled the requirements of A.R.S. § 12-1841 when they timely served a notice of unconstitutionality of HB2023 upon the affected parties on April 20, 2016. *See* Declaration of Sarah Gonski, Ex. C. At the time, ARP had not yet intervened in this litigation. Thus, even assuming that failure to comply with A.R.S. § 12-1841 requires dismissal in federal court, ARP's argument fails.

(lack of reliable access to transportation "makes minority voters less able to access a [] post office or outgoing mail box"); *see also id.* ¶¶ 24-38, 86.

ARP nevertheless asserts that dismissal is appropriate because "[a]llegations that some voters may be inconvenienced by limiting who can collect early ballots does not give rise to a § 2 claim." Mot. at 11. ARP again suggests, in other words, that the Section 2 inquiry is focused on the degree, rather than the racial disproportionality, of the burden at issue. But this position ignores the plain language of Section 2, which prohibits the "abridgement," as well as the denial, of the right to vote. 52 U.S.C. § 10301; *see also Veasey v. Abbott*, 830 F.3d 216, 253 (5th Cir. 2016) (en banc) ("If the State had its way, the Fifteenth Amendment and Section 2 would only prohibit outright *denial* of the right to vote and overtly purposeful discrimination. Yet, both the Fifteenth Amendment and Section 2 also expressly prohibit *abridgement* of the right to vote.") (citation omitted), *cert. denied*, No. 16-393, 2016 WL 5394945 (U.S. Jan. 23, 2017); *LOWV*, 769 F.3d at 243 ("[N]othing in Section 2 requires a showing that voters cannot register or vote under any circumstance."); *Gray v. Johnson*, 234 F. Supp. 743, 746 (S.D. Miss. 1964) ("When the word is used in connection with … the word deny, it means to circumscribe or burden.") (quotation omitted); *Black's Law Dictionary* 7 (9th ed. 2009) (defining "abridge" as "[t]o reduce or diminish"). Indeed, "nothing in Section 2 requires a showing that voters cannot register or vote under any circumstance." *LOWV*, 769 F.3d at 243. Further, ARP's position is at odds not only with the allegations in the Complaint regarding the nature of the burden imposed by HB2023 but also with the conclusions of the en banc Ninth Circuit, which "essentially" adopted Chief Judge Thomas's panel dissent and thus its conclusions that "Arizona has criminalized one of the most popular and effective methods by which minority voters cast their ballots"; "[b]ecause of geographic and other impediments to voting, voting by ballot collection has become a critical means for minority voters to cast their ballots"; and "[t]he totality of the circumstances of this election, coupled with the historic discrimination in Arizona's electoral politics are sufficient to satisfy the second Section 2 requirement." *Feldman*, 843 F.3d at 367, 395,

406. ARP's argument should thus be rejected.

### B.    Plaintiffs Have Alleged Cognizable *Anderson-Burdick* Claims

ARP's contentions that Plaintiffs' undue-burden claims should be dismissed also fail. Challenges to laws on the grounds that they unduly burden the fundamental right to vote in violation of the First and Fourteenth Amendments are governed by the *Anderson*/*Burdick* test, which requires courts to "weigh 'the character and magnitude of the asserted injury to the rights … that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). This test operates on a sliding scale, with more rigid scrutiny applied to more burdensome laws, *id.*, and the severity of the burden judged by its impact on those affected by it. *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 198, 201 (2008) (Stevens, J., controlling opinion); *Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1025 n.2 (9th Cir. 2016) (en banc) (recognizing courts may consider a law's "impact on subgroups, for whom the burden, when considered in context, may be more severe," as well as the impact on the general electorate). The test does not permit rational-basis review or burden shifting. *Pub. Integrity All.*, 836 F.3d at 1025.

### 1.    OOP Provisional Ballots

Plaintiffs have pled plentiful facts to show that Arizona's OOP policy imposes burdens on voters that far outweigh the interests served by that policy. The Complaint expressly alleges that Arizona's policy of disenfranchising OOP voters severely burdens the rights of many voters, Compl. ¶¶ 11, 97, as well as numerous facts supporting that conclusion. *E.g.*, *id.* ¶¶ 7, 52 (OOP law disenfranchised 2,800 voters in 2014 election and 2,200 in 2016 election in Maricopa County); *id.* ¶ 53 ("One of the primary causes for the large number of provisional ballots cast out of precinct … is voter confusion caused by the large number of changes … to … polling locations."); *id.* ¶ 54 (OOP ballots cast in part "because poll workers either are not providing the correct polling location

information to voters, or they are not explaining that the provisional vote cast at the incorrect location will not be counted"); *id.* ¶ 58 ("Voters whose provisional ballots are rejected because they vote in the incorrect precinct face a severe burden: complete disenfranchisement."); *id.* (often, voters "are not given the option to avoid this burden, as poll worker error (by sending them to the wrong polling location or failing to explain to them the consequences of casting their provisional ballot in the wrong precinct) leads them to … cast an uncountable ballot"). The Complaint also makes clear that "[t]he State has no interest that outweighs this severe burden on otherwise eligible members of Arizona's electorate." *Id.* ¶ 97.

Rather than attacking these plainly sufficient pleadings, ARP attempts to wade into the merits of this case, arguing that dismissal is appropriate because the burden on voters is "minimal" and the State's interests are "significant." Mot. at 12-13. Such fact-intensive determinations, of course, cannot be made at this stage of the case, particularly given that Plaintiffs' factual allegations must be taken as true and all inferences must be drawn in Plaintiffs' favor.[9] Those determinations must instead be made after the underlying facts have been presented and tested at trial.

### 2. HB2023

The same analysis applies to ARP's arguments that Plaintiffs' *Anderson-Burdick* challenge to HB2023 should be dismissed. Here again, ARP does not directly take on the facts alleged in the Complaint—nor could it. The Complaint plainly explains that HB2023 imposes significant burdens on voting rights, including severe burdens on some groups of

---

[9] ARP's assertions are also belied by evidence submitted in this case and cited in the Complaint. *See generally* Rodden Rpt. and Lichtman Rpt. In particular, the Complaint and the cited expert reports demonstrate that in many cases the actions of election administrators, at least in part, lead voters to vote at the incorrect location. *See, e.g.*, Compl. ¶¶ 53-54, 58. Thus, contrary to the cases cited by ARP, *see* Mot. at 12, this is not a case where it is simply the voters' responsibility to find the correct voting location. This case is more analogous to *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580 (6th Cir. 2012), where poll-worker errors effectively placed greater responsibilities on voters than the Constitution permits. *Id.* at 595. Of course, this is ultimately a fact-intensive question that the Court need not and should not resolve at this time.

voters.[10] *See, e.g.*, Compl. ¶ 11 ("Plaintiffs, their members, constituents, and numerous other qualified Arizona voters will find their right to vote severely burdened—and in many cases, wholly denied—in future elections."); *id.* ¶ 59 (ballot collection "has particularly benefited voters who are homebound and elderly, and in many cases lacking transportation, as well as voters in the Hispanic, Native-American, and African-American communities"); *id.* ¶¶ 9, 15, 20, 25, 61, 79, 81. It also makes clear that the State's interests in HB2023 are minimal and outweighed by the burdens imposed by that law. *E.g.*, *id.* ¶ 60 (tampering with a ballot or failing to turn in the ballot of another were already felonies prior to enactment of HB2023, and "[t]here is no evidence that fraud in connection with ballot collection has ever occurred in Arizona"); *id.* ¶ 88 ("the State cannot show any legitimate interest in the passage and promulgation of this law sufficient to overcome the rights of the Arizona citizens who are burdened by it"); *id.* ¶¶ 75, 79, 82, 112.

Instead, ARP argues that the burdens imposed by HB2023 are "not unreasonable." Mot. at 14. But that argument must fail at this stage, as ARP's claim is directly at odds with the Complaint's allegations that HB2023 imposes severe and wholly unjustified burdens on the right to vote.[11] Notably, ARP's assertion is rebutted by the conclusions of the en banc Ninth Circuit as well.[12] *Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, 395 (9th Cir. 2016) (en banc) ("Arizona has criminalized one of the most popular and effective methods by which minority voters cast their ballots."); *id.* at 398 ("early

---

[10] ARP's argument that Plaintiffs' undue-burden claim fails because it challenges early voting rather than "the right to vote" lacks merit. As Plaintiffs have repeatedly explained, courts (now including the en banc Ninth Circuit) have applied the *Anderson-Burdick* test to regulations relating to early voting. *See, e.g.*, Pls.' Reply in Supp. of Mot. for Preliminary Inj., Doc. 156 at 21.

[11] ARP also ignores the cumulative impact of the challenged provisions.

[12] ARP's assertion that Plaintiffs have failed to allege a severe burden because "not one individual Plaintiff, declarant, or deponent has … alleged that H.B. 2023 will prevent or has prevented them from voting," Mot. at 14, is also misplaced. As noted, the Complaint contains numerous factual allegations that the loss of ballot collection will prevent people from voting. Further, while not necessary or even pertinent at the motion to dismiss stage, at the preliminary injunction stage Plaintiffs also submitted numerous declarations attesting to the same. *See* Doc. 87 ¶¶ 5, 9, 11-14; Doc. 88 ¶¶ 6, 9; Doc. 93 ¶ 9; Doc. 92 ¶ 7; Doc. 160 ¶¶ 4, 6-7; Doc. 91 ¶¶ 8, 10; Doc. 94 ¶¶ 8, 11.

absentee voting … has transcended convenience and has become instead a practical necessity"); *id.* ("[T]he sponsors of [HB2023] could not identify a single example of voter fraud caused by ballot collection. Not one. Nor is there a single example in the record of this case."); *id.* at 399 ("[T]he specter of voter fraud by ballot collection is much like the vaunted opening of Al Capone's vault: there is simply nothing there."); *id.* ("Thus, when one balances the serious burdens placed on minorities by the law against the extremely weak justification offered by the state, one can only conclude under the *Anderson-Burdick* analysis that the plaintiffs have established a likelihood of success on the merits of their Fourteenth Amendment claim.").

### C.   Plaintiffs Allege a Cognizable First Amendment Claim

ARP's argument for dismissal of Plaintiffs' First Amendment claim should be rejected as well. Plaintiffs have alleged that HB2023 significantly burdens the associational rights of individuals and organizations that are directly involved in the political process. *See* Compl. ¶ 20 (ballot collection key part of get-out-the-vote strategy for Arizona Democratic Party's core constituencies); *id.* ¶ 59 (key part of community organizers' get-out-the-vote strategy for voters with difficulties exercising their right to vote without ballot collection); *id.* ¶ 87 (discussing burden of criminal prosecution, jail time, and felony convictions on political parties, organizers, and activists who utilize ballot collection to help voters effectuate their right to vote). As explained above, Plaintiffs have also alleged that HB2023 serves minimal state interests that are outweighed by even modest burdens on voting rights. These allegations are sufficient to survive the motion to dismiss.

In arguing to the contrary, ARP asserts that HB2023's burden on associational rights is "minimal" and that it "easily hurdles the balancing test at issue." Mot. at 16. But ARP again ignores the standard that governs here—i.e., that allegations in the Complaint must be taken as true and all inferences must be drawn in Plaintiffs' favor—and invites the Court to consider not the sufficiency of the pleadings but rather the merits of a contested, fact-intensive issue in this case. The Court should decline to do so at this stage.

In addition, the Court should reject ARP's argument that ballot collection is not expressive activity. As set forth in previous briefing, ballot collection is similar to the types of expressive activity that other courts have found to be protected by the First Amendment. *See* Compl. ¶¶ 112-15; *see League of Women Voters of Fla. v. Browning*, 575 F. Supp. 2d 1298, 1321 (S.D. Fla. 2008) ("Plaintiffs' interactions with prospective voters in connection with their solicitation of voter registration applications constitutes constitutionally protected activity."); *Ass'n of Cmty. Orgs. for Reform Now v. Cox*, No. 1:06-CV-1891-JTC, 2006 WL 6866680, at *7 (N.D. Ga. Sept. 28, 2006) (voter registration deserves "the traditional protection of participation in the political process required by the Constitution"); *Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 700 (N.D. Ohio 2006); *cf. Coal. for Sensible & Humane Sols. v. Wamser*, 771 F.2d 395, 398-99 (8th Cir. 1985) (cognizable injury where members were prevented from registering voters); *People Organized for Welfare & Emp't Rights v. Thompson*, 727 F.2d 167, 170 (7th Cir. 1984); Doc. 85 at 12-14; Doc. 156 at 19-20. And, Chief Judge Thomas explained in his panel dissent that, in his view, this Court erred at the preliminary injunction stage "in concluding that H.B. 2023 did not burden [Plaintiffs'] First Amendment associational rights." *Feldman*, 843 F.3d at 399 n.4 (Thomas, C.J., dissenting). The Court should thus permit this claim to proceed for resolution on the merits.

### D. Plaintiffs Have Adequately Alleged that HB2023 Is Intentionally Racially Discriminatory

ARP's argument that Plaintiffs have failed to state intentional race-discrimination claims fails as well. To plead intentional race discrimination, a plaintiff must allege sufficient facts for a court to infer that the targeting of the group at issue was a "motivating" factor for the challenged action. *See Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265-66 (1977). The Supreme Court has identified several factors courts should consider in determining if an act was motivated by discriminatory intent, including a law's disproportionate impact, statements by legislators, and the historical background and sequence of events leading to the law's enactment. *Id.*;

1    *see also Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 487 (1997).

2         In addition to alleging expressly that Arizona acted with discriminatory intent in

3    enacting HB2023, Compl. ¶¶ 100-05, the Complaint contains abundant allegations from

4    which discriminatory intent can be inferred. It details Arizona's history of discrimination

5    against minorities and its ongoing effects. *See, e.g.*, *id.* ¶¶ 24-47. It demonstrates that the

6    sequence of events leading to the enactment of HB2023 provided Arizona Republicans

7    with a strong motive to suppress minority voting. *See, e.g.*, *id.* ¶ 20 (ballot collection key

8    part of get-out-the-vote strategy for Arizona Democratic Party's core constituencies,

9    which includes Hispanic, Native American, and African American voters); *id.* ¶ 70

10   (sudden increase in the Hispanic community's use of vote by mail in 2010 caused

11   Republicans to attempt to restrict it under specter of "fraud"). It alleges that HB2023

12   disproportionately burdens minority voters, that the legislature knew it would do so, that

13   there is no legitimate justification for HB2023, and that the justifications provided for the

14   law were pretextual. *See, e.g.*, *id.* ¶ 9 (HB2023 "passed over the protests of Arizona's

15   Hispanic, Native-American, and African-American voters, communities in which voters

16   have relied heavily on community members, organizers, and friends to deliver ballots to

17   registrars' offices in past elections"); *id.* ¶¶ 68-70 (DOJ precleared other portions of

18   SB1412 but would not preclear ballot-collection prohibition without more information,

19   which Arizona declined to provide); *id.* ¶ 82 (when legislators warned that HB2023 would

20   disenfranchise Native American voters, many laughed). And it alleges that Arizona's

21   former elections director admitted that a precursor bill targeted Hispanic voters. *Id.* ¶ 69.

22   Taken together, these allegations plainly can (and, for purposes of the motion to dismiss,

23   do) support the inference that the State enacted HB2023, at least in part, to suppress the

24   vote of minority voters. *Accord Veasey v. Perry*, 29 F. Supp. 3d 896, 920-21 (S.D. Tex.

25   2014) (pleading facts consistent with *Arlington Heights* sufficient to state intentional

26   discrimination claim).

27        ARP's arguments that these allegations are insufficient are wholly without merit.

28   While ARP asserts that the Fifteenth Amendment "applies only to practices that directly

affect access to the ballot," Mot. at 17, ARP ignores that that the Fifteenth Amendment's scope is broad, *Lane v. Wilson*, 307 U.S. 268, 275 (1939) (prohibits any "contrivances by a state to thwart equality in the enjoyment of the right to vote by citizens of the United States regardless of race or color"), as is the scope of the VRA, *Veasey*, 830 F.3d at 259-60 ("the Voting Rights Act defines 'vote' to include 'all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted'"), which also proscribes intentional race discrimination, and that "when 80% of the electorate uses early absentee voting as the method by which they cast their ballots, the method has transcended convenience and has become instead a practical necessity." *Feldman*, 843 F.3d at 398. In addition, ARP's contention that legislation that preceded HB2023 and events from the preclearance process are irrelevant, Mot. at 17, ignores that the *Arlington Heights* Court specifically identified the historical background and sequence of events leading up to the passage of legislation as relevant to the intentional-discrimination inquiry, and made it clear that courts should consider the totality of the circumstances. 429 U.S. at 267-68. Further, ARP's claim that HB2023 is "sensible," Mot. at 17, is plainly rooted in a dispute with Plaintiffs about the underlying facts and thus cannot be considered at this stage. ARP's motion to dismiss Plaintiffs' intentional race-discrimination claims should therefore be denied.

## CONCLUSION

For the reasons stated above, and based on the allegations of the Complaint, Plaintiffs respectfully request that the Court deny ARP's motion to dismiss on all grounds. In the event that the Court finds that dismissal of any claim in Plaintiffs' Complaint is warranted, which it is not, Plaintiffs respectfully request that they be granted leave to amend the Complaint under Rule 15(a)(2).

1

2     Dated: February 7, 2017                    *s/ Joshua L. Kaul*
                                                 Daniel C. Barr (# 010149)
3                                                Sarah R. Gonski (# 032567)
                                                 PERKINS COIE LLP
4                                                2901 North Central Avenue, Suite 2000
                                                 Phoenix, Arizona 85012-2788
5
                                                 Marc E. Elias (WDC# 442007)*
6                                                Bruce V. Spiva (WDC# 443754)*
                                                 Elisabeth C. Frost (WDC# 1007632)*
7                                                Amanda R. Callais (WDC# 1021944)*
                                                 PERKINS COIE LLP
8                                                700 Thirteenth Street N.W., Suite 600
                                                 Washington, D.C. 20005-3960
9
                                                 Joshua L. Kaul (WI# 1067529)*
10                                               PERKINS COIE LLP
                                                 One East Main Street, Suite 201
11                                               Madison, Wisconsin 53703

12                                               *Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and a Notice of Electronic Filing was transmitted to counsel of record.

_s/ Sarah R. Gonski_