**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Democratic National Committee, DSCC, and Arizona Democratic Party, <br><br>     Plaintiffs, <br><br> v. <br><br> Arizona Secretary of State's Office, Michele Reagan, and Mark Brnovich, <br><br>     Defendants. | No. CV-16-01065-PHX-DLR <br><br> **ORDER** |

  Plaintiffs—the Democratic National Committee, the Democratic Senatorial Campaign Committee, and the Arizona Democratic Party—allege that two aspects of Arizona's election regime violate § 2 of the Voting Rights Act (VRA) and the First, Fourteenth, and Fifteenth Amendments to the United States Constitution. First, Plaintiffs challenge Arizona's prohibition on counting out-of-precinct (OOP) provisional ballots, which derives from the collective effect of A.R.S. §§ 16-122, -135, -584, and related rules prescribed by the Arizona Secretary of State in the Election Procedures Manual. Second, Plaintiffs challenge H.B. 2023, codified at A.R.S. § 16-1005(H)-(I), which makes it a felony for third parties to collect early ballots from voters unless the collector falls into a statutorily enumerated exception. Plaintiffs seek a declaration that the challenged election rules are unlawful, and an order enjoining the Arizona Secretary of State's Office, Arizona Secretary of State Michele Reagan, and Arizona Attorney

General Mark Brnovich (State Defendants) from:

>a. Implementing, enforcing, or giving any effect to A.R.S. § 16-122, § 16-135, or § 16-584 to the extent that they require Defendants to reject provisional ballots in their entirety solely because they were cast in the wrong precinct;
>
>b. Requiring Defendants to count OOP ballots for races for which the voter was otherwise eligible to cast a vote;
>
>c. Implementing, enforcing, or giving any effect to H.B. 2023.

(Doc. 233 at 41-42.)

The State Defendants have moved to dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19. (Doc. 245.) They contend that Plaintiffs have failed to name necessary and indispensable parties to this action, and that they have named unnecessary defendants for each of their claims. The motion is fully briefed and neither party requested oral argument. For the following reasons, the Court finds that the absent parties identified by the State Defendants are not necessary or indispensable, and therefore denies that portion of the motion to dismiss. By stipulation of the parties, however, the Court grants the State Defendants' request to dismiss the Secretary of State's Office because its presence is unnecessary.

**I. Legal Standards**

Rule 19 governs the circumstances in which an absent party must be joined to an action:

>(a) Persons Required to Be Joined if Feasible.
>
>(1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>(A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
>(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>(i) as a practical matter impair or impede the person's ability to protect the interest; or

>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
>
> (2) *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.
>
> . . .
>
> (b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. . . .

As of December 1, 2007, Rule 19 no longer uses the terms "necessary" or "indispensable" to describe absent parties who should or must be joined. Instead, the rule now "refers to 'persons required to be joined if feasible' and persons in whose absence, if they cannot be joined, the action should not proceed." *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 n.1 (9th Cir. 2010) (*Peabody II*). These changes were merely stylistic, and "the substance and operation of the Rule both pre- and post-2007 are unchanged." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 856 (2008). Thus, Rule 19(a)(1) defines a person traditionally denominated as "necessary" to an action, while Rule 19(b) defines a person traditionally denominated as "indispensable." *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 867 n.5 (9th Cir. 2004).

A party may raise "failure to join a party under Rule 19" as a defense in a pre-answer motion pursuant to Rule 12(b)(7). When ruling on a motion to dismiss for nonjoinder, the court must answer three successive questions:

> 1. Is the absent party necessary (i.e., required to be joined if feasible) under Rule 19(a)?
>
> 2. If so, is it feasible to order that the absent party be joined?
>
> 3. If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed?

*Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012).

"The inquiry is a practical, fact-specific one, designed to avoid the harsh results of rigid application." *Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.*, 276 F.3d 1150, 1154 (9th Cir. 2002). The movant bears the burden of persuading the court that dismissal is appropriate. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

**II. Discussion**

Dismissal for failure to join a necessary party is appropriate only if joinder is not feasible and the absent party is indispensable to the litigation. *See Brosnahan v. Pozgay*, No. 06cv2195 DMS (NLS), 2007 WL 173969, at *2 (N.D. Cal. Jan. 17, 2007) (citing *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992)). The State Defendants contend that elections officials from each of Arizona's fifteen counties are necessary and indispensable to Plaintiffs' OOP ballot claims, as are county attorneys and city and town prosecutors to Plaintiffs' H.B. 2023 claims. They make no showing, however, that it is infeasible to join these absent parties. "Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction." *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) (*Peabody I*). The State Defendants do not argue that any of these circumstances exist.[1]

Instead, the State Defendants contend that dismissal is appropriate because Plaintiffs have been aware of the Rule 19 argument throughout this litigation and have nonetheless refused to amend their complaint to add the parties the State Defendants believe are necessary. They rely on *Green v. McIntire*—decided over a century ago—in which the D.C. Circuit Court of Appeals affirmed the dismissal of a complaint because the plaintiff refused to amend after the district court determined that he had failed to name necessary parties. 39 App. D.C. 249, 251 (D.C. Cir. 1912). *Green* is

---

[1] In fact, the State Defendants cite *Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012) to demonstrate the opposite: "[t]here is precedent for including county officials responsible for conducting elections as defendants in constitutional challenges to Arizona election procedures." (Doc. 262 at 4 n.3.)

- 4 -

distinguishable, however, because this Court has not yet determined whether any of the absent parties are necessary or indispensable, nor have Plaintiffs indicated that they would be unwilling to amend their complaint should the Court order that they be joined. Rule 19 does not impose upon Plaintiffs an obligation to concede to the State Defendants' demands and join potentially dozens of additional parties before the Court determines whether they are necessary to the litigation.

The State Defendants' failure to show that any of the absent parties cannot feasibly be joined is a sufficient reason to deny the motion to dismiss. Though the State Defendants have not requested alternatively that the Court order the absent parties to be joined pursuant to Rule 19(a)(2), the Court nonetheless will evaluate whether the absent parties should be joined.

### A.  OOP Ballot Claims

The State Defendants first contend that county elections officials are necessary and indispensable to Plaintiffs' OOP ballot claims because in their absence the Court cannot accord complete relief among the existing parties. For purposes of Rule 19(a)(1)(A), "[t]he sufficiency of the relief available 'is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought.'" *Ariz. Democratic Party v. Reagan*, No. CV-16-03618-PHX-SPL, 2016 WL 6523427, at *5 (D. Ariz. Nov. 3, 2016) (quoting *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3rd Cir. 1996)). Completeness "is concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action." *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983). Accordingly, "the court asks whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties." *Disabled Rights*, 375 F.3d at 879.

The State Defendants contend that the Court cannot grant Plaintiffs meaningful relief because "the State Defendants are not involved in the counting of OOP ballots, or with determining which ballots should be counted—those duties are the legal

1 responsibility of county officials, alone." (Doc. 245 at 3-4.) This contention reflects both a misconception of the State Defendants' role in overseeing and administering elections and an overly mechanical interpretation of Plaintiffs' requested relief.

Although county officials are responsible for counting ballots and verifying proper voter registration, *see* A.R.S. §§ 16-621(A), -584(E), the State Defendants also play a role in determining how OOP ballots are counted. Arizona law requires the Secretary, after consulting with county officials, to "prescribe rules to achieve and maintain the maximum degree of correctness, impartiality, uniformity and efficiency on the procedures for early voting and voting, and of producing, distributing, collecting, counting, tabulating and storing ballots." A.R.S. § 16-452(A). These rules are prescribed in an Election Procedures Manual and have the force of law. A.R.S. § 16-452(B)-(C). "Any person who does not abide by the Secretary of State's rules is subject to criminal penalties," *Ariz. Libertarian Party, Inc. v. Bayless*, 351 F.3d 1277, 1280 (9th Cir. 2003) (citing A.R.S. § 16-452(C)), and the Attorney General is authorized to prosecute such violations, A.R.S. § 16-1021.

Thus, although county officials are responsible for physically counting ballots, they are not empowered to count or reject ballots at their discretion. Rather, "[a]ll proceedings at the counting center shall be under the direction of the board of supervisors or other officer in charge of elections *and shall be conducted in accordance with the approved instructions and procedures manual*[.]" A.R.S. § 16-621(A) (emphasis added). Indeed, the 2014 Elections Procedures Manual instructed the counties on how to verify and count provisional ballots. As relevant here, the Manual stated that "[t]he ballot shall remain unopened and shall **not be counted** if . . . the voter is in the wrong precinct/voting area[.]" (Doc. 101-8 at 18 (emphasis in original).) It is precisely this policy, practice, and interpretation of Arizona law that Plaintiffs ask the Court to enjoin and declare unlawful.

Though the Court cannot require the State Defendants to physically count OOP ballots for races for which the voter was otherwise eligible to cast a vote, it can require

the Secretary to prescribe such a procedure in the Elections Procedures Manual, which county election officials then would be bound by law to follow. Further, the Attorney General can ensure compliance with such a directive because he is authorized to prosecute county officials who violate it. Such relief is "neither hollow nor meaningless[.]" *Disabled Rights*, 705 F.3d at 880. The Court therefore finds that it may accord meaningful relief among the existing parties without joining elections officials from each county.[2]

Though not explicitly argued, the State Defendants suggest that joinder also is necessary under Rule 19(a)(1)(B)(i) because county elections officials have interests in this action that might be impaired or impeded if the Court resolves Plaintiffs' OOP ballot claims in their absence. Specifically, they contend that "counties are responsible for procuring and maintaining ballot counting equipment," and therefore requiring that OOP ballots be partially counted will impose unique administrative burdens on each county. (Doc. 262 at 5.)

Rule 19(a)(1)(B) "focuses on whether the absent party's participation is necessary to protect its legally cognizable interests or to protect other parties from a substantial risk of incurring multiple or inconsistent obligations because of those interests." *Disabled Rights*, 705 F.3d at 880. "An absent party with an interest in the action is not a necessary party under Rule 19(a) if the absent party is adequately represented in the suit." *Salt River Project*, 672 F.3d at 1180 (internal quotations and citation omitted). When assessing whether an existing party adequately represents the interests of an absent party, the court considers:

> whether the interests of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments; whether the party is capable of and willing to make such arguments; and whether the absent party would offer any necessary element to the proceedings that the present parties would neglect.

---

[2] The State Defendants also ignore Plaintiffs' request for declaratory relief and make no argument that county elections officials are likely to engage in a practice declared by the Court to be unlawful.

- 7 -

1  *Shermoen*, 982 F.2d at 1318 (internal quotations and citation omitted).

2  The State Defendants fail to address whether they are capable of adequately representing the counties' interests on these issues. On this question, the Court finds Judge Logan's decision in *Arizona Democratic Party v. Reagan*, which involved a challenge to Arizona's voter registration deadline, instructive. 2016 WL 6523427, at *7. There, the Secretary argued that absent joinder the lawsuit would "directly impair the interests of the unnamed counties," because there was "no representative to articulate the magnitude of th[e] administrative burden and expense" that the plaintiff's requested relief would impose upon county elections officials. *Id.* Judge Logan rejected this argument and concluded that "[t]he interests of the Secretary are aligned with the counties and she is capable of presenting arguments on behalf of the absent county officials." *Id.*

The same is true here. Indeed, the Secretary already has advanced arguments and presented evidence concerning the administrative burdens that Plaintiffs' requested relief would impose on county elections officials. (*See* Doc. 180 at 17-18; Doc. 180-1 at 30-31, 51-56.) It also is worth noting that no county has claimed an interest in the OOP ballot claims or sought intervention. To the contrary, officials from Maricopa County originally were named as defendants but later stipulated to their dismissal. (*See* Doc. 203.) For these reasons, the Court finds that the interests of the counties are adequately represented by the State Defendants, such that their presence in this action is not necessary.

**B.  H.B. 2023**

With respect to the H.B. 2023 claims, the State Defendants argue that Plaintiffs must join all county attorneys and city and town prosecutors because the Attorney General does not have exclusive authority to enforce the law. (Doc. 245 at 7.) Thus, "[i]n order for the Plaintiffs to be free from the threat of enforcement," the State Defendants contend, "all those with power to enforce H.B. 2023 must be enjoined from doing so." (*Id.*) The Court disagrees.

To begin, "when a plaintiff challenges the constitutionality of a rule of law, it is the state official designated to enforce that rule who is the proper defendant, even when

that party has made no attempt to enforce the rule." *Am. Civil Liberties Union v. The Fla. Bar*, 999 F.2d 1486, 1490 (11th Cir. 1993). Further, the availability of meaningful relief is determined based upon those who are already parties, not as between parties and nonparties whose joinder is sought. *Angst*, 77 F.3d at 705. The relevant inquiry, then, is whether the Court can accord Plaintiffs meaningful relief by enjoining the Attorney General from enforcing H.B. 2023. The answer undoubtedly is yes.

The State Defendants correctly note that, although the Attorney General is empowered to enforce H.B. 2023, he is not the only official with such authority. The Attorney General is authorized to enforce Arizona's election laws "[i]n any election for state office, members of the legislature, justices of the supreme court, judges of the court of appeals or statewide initiative or referendum," but in elections for "county, city or town office, community college district governing board, judge or a county, city, or town initiative or referendum," that authority resides with "the appropriate county, city or town attorney[.]" A.R.S. § 16-1021. The Attorney General and the appropriate county attorneys share concurrent enforcement authority in special district elections. *Id.* The State Defendants acknowledge, however, that the Attorney General will share enforcement authority in most elections because "almost all elections will include statewide . . . races." (Doc. 245 (citing A.R.S. § 16-204).) Enjoining the Attorney General's enforcement activities will therefore result in meaningful, not hollow, relief.

Moreover, the State Defendants ignore Plaintiffs' request for an order declaring H.B. 2023 unconstitutional and unlawful under the VRA. Although the Attorney General might lack authority to direct the enforcement activities of county and municipal prosecutors, there is no reason to believe that these local law enforcement officials will attempt to enforce H.B. 2023 should the Court declare it unconstitutional or unlawful under the VRA. For these reasons, the Court finds that an order declaring H.B. 2023 to be unlawful and enjoining the Attorney General from enforcing it will accord meaningful relief between those who already are parties to this litigation.

### C. Unnecessary Defendants

Lastly, the State Defendants argue that the Court should dismiss: (1) the Secretary from Plaintiffs' H.B. 2023 claims because she "has no role whatsoever in enforcing H.B. 2023," (2) the Attorney General from Plaintiffs' OOP ballot claims because he has no "role in counting ballots or overseeing the voting process," and (3) the Secretary of State's Office from all claims because Plaintiffs have named the Secretary as a defendant in her official capacity and, therefore, "[i]f the Court were to order any of the requested injunctive relief against the Secretary, the Secretary and the employees of the department of the state that she supervisors would implement it[.]" (Doc. 245 at 8-10.)

The State Defendants correctly note that the Secretary does not enforce criminal laws and that H.B. 2023 is functionally a criminal statute. Nonetheless, the actions of the Secretary and her office in connection with this case suggest that she might have some involvement in implementing the law. For example, after the Supreme Court stayed the *en banc* Ninth Circuit's order effectively enjoining H.B. 2023 pending *en banc* review, the Secretary's office issued guidance that third-party collectors who collected early ballots during the brief period during which it was legal to do so could deliver those ballots to the appropriate county officials by the following Monday and "there'd be no problem." (Doc. 256-1 at 5-6.) Likewise, Election Director Eric Spencer emailed county elections officials directing them to "accept all early ballots turned into them, regardless of who returns those ballots or how many ballots were collected during the brief 18-hour window this practice was deemed legal[.]" (*Id.* at 2.) According to news reports, the Attorney General's office deferred to the Secretary's direction on this issue. (*Id.* at 6.) Because it appears, at least at this stage, that the Secretary might have a role in implementing H.B. 2023, the Court declines to dismiss her from Plaintiffs' H.B. 2023 claims at this juncture.

The Court also denies the State Defendants' request to dismiss the Attorney General from Plaintiffs' OOP ballot claims. As previously explained, although the Attorney General does not count ballots, he is authorized to enforce violations of

Arizona's election laws. Thus, if in response to an order of this Court the Secretary were to prescribe rules directing counties to partially count OOP ballots, the Attorney General might play an important role in ensuring compliance with such a directive.

Finally, in reliance on the State Defendants' representations, Plaintiffs do not object to dismissing the Secretary of State's Office from this action. Accordingly, the Court grants the State Defendants' motion to dismiss the Secretary of State's Office because its presence is unnecessary.

**IT IS ORDERED** that the State Defendants' Motion to Dismiss Second Amended Complaint (Doc. 245) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Arizona Secretary of State's Office is hereby **DISMISSED** from this action.

2. The State Defendant's motion to dismiss for failure to join a party under Rule 19 otherwise is **DENIED**.

Dated this 3rd day of March, 2017.

Douglas L. Rayes
United States District Judge